Matter of Merrill (2024 NY Slip Op 01713)

Matter of Merrill

2024 NY Slip Op 01713

Decided on March 27, 2024

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 27, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
FRANCESCA E. CONNOLLY
CHERYL E. CHAMBERS, JJ.

2020-07221

[*1]In the Matter of Anthony. Merrill, admitted as Anthony Vincent Merrill, an attorney and counselor-at-law. Grievance Committee for the Ninth Judicial District, petitioner; Anthony V. Merrill, respondent. (Attorney Registration No. 5402607)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Ninth Judicial District. In a separate proceeding under Appellate Division Docket No. 2019-12691, by decision and order on motion of this Court dated June 5, 2020, the respondent was immediately suspended from the practice of law pursuant to Judiciary Law § 90(4)(f) as a result of his conviction of a serious crime. Upon motion by the respondent, by decision and order on motion of this Court dated April 19, 2021, under Appellate Division Docket No. 2019-12691, the decision and order on motion of this Court dated June 5, 2020, was vacated forthwith, and the respondent was immediately reinstated as an attorney. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on February 10, 2016, under the name Anthony Vincent Merrill.

Courtny Osterling, White Plains, NY (Matthew Lee-Renert of counsel), for petitioner.
Anthony V. Merrill, Forest Hills, NY, respondent pro se.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Ninth Judicial District served the
respondent with a notice of petition and a verified petition, both dated September 17, 2020, containing three charges of professional misconduct. The respondent served and filed a verified answer dated October 14, 2020, admitting to all of the factual allegations contained in the verified petition but denying the conclusions of law contained therein. By stipulation dated April 6, 2021, the parties consented to the filing of a verified supplemental petition dated April 6, 2021, containing 12 additional charges. The respondent served and filed a verified supplemental answer dated April 26, 2021. By decision and order on motion dated April 19, 2021, and a decision and motion on application dated June 24, 2021, this Court referred the matter to Kevin. J. Plunkett, as Special Referee, to hear and report. By stipulation dated November 10, 2021, the parties agreed that paragraphs 20, 22, 44, and 46 of the verified supplemental petition and charges 4, 5, 10, and 11 were withdrawn. After a hearing on November 16, 2021, the Special Referee submitted a report dated March 17, 2022, in which he sustained all 11 remaining charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent opposes the motion but accepts the Special Referee's findings as to the charges, and requests, inter alia, that this Court impose a public censure. In the event that this Court imposes a sanction of suspension, the respondent requests credit for the time he previously served under the suspension imposed by decision and order of this Court under Docket No. 2019-12691.
[*2]The Petition
Charges 1 through 3 emanate from a common set of facts. Based upon the respondent's admissions and the evidence adduced, we find those facts are as follows:
The respondent admitted that between August 17, 2017, and September 11, 2017, he knowingly and with intent to defraud, assumed the identity of Olga Chagin, a resident of Suffolk County, by using her personal identification information—her name, date of birth, and social security number—to apply for and receive credit cards from American Express and Capital One, and then used credit in Chagin's name to make purchases for his own benefit without her knowledge or authorization. During the course of this conduct, the respondent stole a total of $21,513.18, part of which belonged to Chagin and part of which belonged to American Express and Capital One. The respondent agreed to pay restitution in the sum of $21,513.18 to Chagin, American Express, and Capital One. On July 24, 2020, the respondent pleaded guilty to disorderly conduct, in violation of New York Penal Law § 240.20, a violation, in full satisfaction of the criminal charges filed against him.
Based on the foregoing, charge 1 alleges that the respondent engaged in illegal conduct that adversely reflects on his honesty, trustworthiness and fitness as a lawyer; charge 2 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation; and charge 3 alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(b), (c) and (h) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charges 6 through 9 emanate from a common set of facts. Based upon the respondent's admissions and the evidence adduced, we find those facts are as follows:
In or about 2016, Diane Totino retained the respondent, on a 20% contingent fee basis, to pursue a personal injury claim on her behalf, arising from injuries she sustained at E.B. Elliots restaurant (hereinafter the Totino matter).
From October 1, 2016, through December 31, 2016, the respondent was the sole signatory and owner of a Capital One Bank account with account number ending in 5527, titled "Anthony V. Merrill, 450 Manatuck Blvd, Brightwaters, NY 11718" (hereinafter account x5527).
From November 7, 2016, through January 9, 2017, the respondent was the sole signatory and owner of a Capital One Bank account with account number ending in 1123, also titled "Anthony V. Merrill, 450 Manatuck Blvd, Brightwaters, NY 11718" (hereinafter account x1123).
Neither account x5527 nor account x1123 were attorney escrow, attorney special, or attorney trust accounts. In fact, both accounts were personal accounts that belonged exclusively to the respondent, who used the accounts to make personal cash withdrawals and/or pay for his own personal purchases and financial obligations.
In or about November 2016, the respondent obtained a settlement in the Totino matter for the sum of $9,000. On or about November 11, 2016, a check in the amount of $9,000, payable to "Diane Totino and Anthony Merrill As Attorney," was issued to the respondent as the agreed-upon settlement in the Totino matter.
On or about November 22, 2016, the respondent deposited the Totino settlement check into account x5527, at a time when the balance was $1.05. Between November 25, 2016, and December 8, 2016, the respondent disbursed $8,974.99 from account x5527, as follows: (a) cash withdrawals in the total sum of $2,704.99; (b) $14.86 to National Grid NY Utility Pay; and (c) five electronic transfers into account x1123, in the total sum of $6,270.
Between November 30, 2016, and December 31, 2016, the respondent also used account x1123 to make personal purchases and pay other financial obligations, including inter alia, Whitey's Service Center, 7-Eleven, Long Island Power Authority (LIPA), GEICO Insurance, Zales Jewelers, Propark Parking, and one or more food eateries.
Ultimately, the only disbursement of settlement funds to Totino directly from any of the respondent's accounts was a wire transfer, sent by the respondent to Totino on December 14, 2016, in the amount of $2,500, from account x1123, nearly one month after the respondent had deposited the $9,000 settlement check into account x5527.
On or about November 23, 2016, at a time when there were client funds on deposit in the account, the respondent deposited personal funds in the sum of $15 into account x5527. Between December 2, 2016, and December 5, 2016, at a time when there were client funds on deposit in the account, the respondent made four different deposits of personal funds totaling approximately $3,106.05 into account x1123.
Concerning the Totino matter, the respondent did not file the required written statement with Office of Court Administration (OCA) after entering into a contingent fee agreement, as required by 22 NYCRR 691.20(a)(1), and he did not file the closing statement with OCA, as required by 22 NYCRR 691.20(b)(1).
By virtue of the foregoing, charge 6 alleges that the respondent engaged in commingling, charge 7 alleges that the respondent breached his fiduciary duty to deposit all client and/or third-party funds, received incident to his practice of law, into a duly constituted attorney special account, and charges 8 and 9 allege that the respondent engaged in conduct prejudicial to the administration of justice by failing to file the required retainer and closing statements with OCA, in violation of rules 1.15(a) and (b)(1) and 8.4(d) of the Rules of Professional Conduct.
Charge 12 alleges that the respondent breached his fiduciary duty to deposit all funds, received incident to his practice of law, into a duly constituted attorney special account, in violation of rule 1.15(b)(1) of the Rules of Professional Conduct. In September 2017, the respondent represented Paul Figueroa in a claim for unpaid professional services that Figueroa rendered to Hi-Tek Data Corporation (hereinafter the Figueroa matter). On or about September 29, 2017, the parties reached an agreement in which Hi-Tek Data Corporation agreed to pay Figueroa the sum of $2,000, in settlement of all claims.
On or about October 24, 2017, pursuant to the terms of the settlement agreement, Hi-Tek Data Corporation sent a $2,000 check payable to the respondent to his personal address. The respondent did not deposit the $2,000 settlement check into a duly constituted attorney special account and, instead, cashed the check on or about October 26, 2017.
Charges 13 and 14 allege that the respondent failed to maintain one or more required records for the Totino and Figueroa matters, respectively, in violation of rule 1.15(d)(1) of the Rules of Professional Conduct. During the course of its investigation, the Grievance Committee asked the respondent to provide various records and documents concerning the Totino matter including, inter alia, (a) the complete original client file; (b) any retainer statement and/or closing statement that the respondent filed with OCA, pursuant to 22 NYCRR 691.20; (c) a copy of the settlement check the respondent had received; and (d) a breakdown of what, if any, portion of the settlement was retained by the respondent for costs and attorney fees. The respondent advised the Grievance Committee that he was unable to answer these inquiries as he did not possess the client files, documentation, or bank records that the Grievance Committee had requested.
During the course of its investigation, the Grievance Committee requested the respondent provide various records and documents concerning his representation of Figueroa, including, inter alia, (a) his original client file for any matters wherein he had represented Figueroa; (b) the total amount of any settlements reached and paid to the respondent for disbursement to his client; (c) the dates and accounts into which each such settlement was deposited; and (d) a breakdown of any settlements reflecting the dates and amounts of each disbursement to the client and any other amount retained by the respondent for fees and/or costs.
The respondent was also asked to provide copies of specified bank records for each and every account maintained by him wherein he had deposited, transferred, or disbursed any funds received incident to his practice of law, during the period from June 1, 2016, to the present.
The respondent advised the Grievance Committee that he was unable to respond to these inquiries as he did not possess the client files, documentation, or bank records that the Grievance Committee had requested.
After being served with a judicial subpoena duces tecum on or about November 5, 2020, the respondent obtained his bank statements and delivered them to the Grievance Committee, but failed to provide the files or documentary information concerning the Totino and Figueroa matters that the Grievance Committee had requested.
Based on the foregoing, charge 15 alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
The Hearing Record
At the time the respondent was admitted to the Bar, he was working for the law firm of Frank & Associates in Farmingdale. He was supervised by Neil M. Frank. According to the respondent, he had brought several clients to the firm, including Totino and Figueroa. Totino signed a retainer agreement with the law firm, which the respondent stated that he gave to a paralegal or the office manager, and therefore, he did not have a copy of the retainer agreement. The respondent [*3]testified that he did not personally file the retainer agreement with OCA and had assumed that it would be filed by the firm. When asked why he deposited Totino's settlement check into his personal bank account, the respondent explained that it was the firm's practice that if he brought in a case, he would handle the case. The firm would not take a cut of the fee, and the respondent would have the settlement check made payable to him rather than the firm. When staff counsel informed the respondent that neither Frank nor the firm's office manager had any recollection of the Totino matter and there was no record of the matter in the firm's computer system, the respondent testified that the firm's computer had a virus in 2018, and lost all of its earlier files. The respondent further stated that Frank is a senior person who is forgetful. The respondent testified that Frank told the respondent that he could deposit Totino's settlement check into his personal bank account if he had Totino's permission. Based on this advice, the respondent obtained permission from Totino, deposited the settlement check into his personal account, and paid Totino the remaining portion of the settlement funds in cash. According to the respondent, Totino's share of the settlement was $7,200. The respondent never verified whether his conduct was ethically permissible. When asked for his file in the Totino matter, the respondent testified that he did not have it; he stated that it was in the offices of Frank & Associates.
As for the Figueroa matter, the respondent testified that this case also was handled through Frank & Associates and therefore the respondent did not have the Figueroa file. According to the respondent, the firm had no "day-to-day involvement" in this case and he did not tell his supervisors that he had received a settlement check for the Figueroa matter. The settlement check was made payable to the respondent and sent to his personal address. The respondent testified that after he cashed the settlement check, he gave Figueroa cash for his portion of the settlement funds. The respondent could not explain why the "Merrill Law Firm" appeared on the W-9 form relating to the Figueroa matter even though the respondent was working for Frank & Associates at the time of the settlement.
The respondent testified at the hearing that the misconduct alleged against him dated back to 2016 and 2017, when he was a newly admitted attorney. While working at Frank & Associates, he was mentored by Frank, whom the respondent described as "not the greatest mentor." Frank was disbarred by opinion and order of this Court dated August 21, 2019 (see Matter of Frank, 176 AD3d 64). According to the respondent, he was friends with Totino and Figueroa and acted with their consent, and he repaid Chagin, who is his ex-fiancé. At the time of the charges herein, the respondent testified that he was under the influence and control of a compulsive gambling addiction, for which he was not being treated. Since 2018, the respondent has sought treatment for his gambling addiction and has successfully abstained from gambling and controlled his addiction. He presently attends Gamblers' Anonymous meetings and sees a licensed social worker with the New York Council on Problem Gambling, who testified at the hearing that the respondent had learned to control his gambling addiction and maintained abstinence on gambling.
Findings and Conclusion
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all 11 charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted. In determining an appropriate measure of discipline, weighing the mitigating and aggravating evidence submitted, we find that the respondent's conduct warrants his suspension from the practice of law for a period of 18 months, without credit for the time served under the suspension imposed by decision and order of this Court dated June 5, 2020, under Appellate Division Docket No. 2019-12691.
LASALLE, P.J., DILLON, DUFFY, CONNOLLY, and CHAMBERS, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Anthony V. Merrill, admitted as Anthony Vincent Merrill, is suspended from the practice of law for a period of 18 months, commencing April 26, 2024, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than April 28, 2025. In such application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. [*4]§ 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Anthony V. Merrill, admitted as Anthony Vincent Merrill, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Anthony V. Merrill, admitted as Anthony Vincent Merrill, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court